# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

APR 0 6 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of<br>HP laptop (Serial #CNF8023G0D), HP Chromebook (Serial #8CG717118V), ASUS laptop (Serial #X5405A-BPD0602V), LG cellphone (Serial #GBLGL63BGB / ZNFL63BL), 2 USB drives, CURRENTLY LOCATED AT the United States Secret Service Sacramento Resident Office Evidence Vault, 501 I St. Suite 12-100, Sacramento, CA 95814 | Case No.<br><br>**2:18-SW 0 3 4 2    CKD** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 471 | Obligations or securities of United States |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent David Schacht, U.S. Secret Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **4/6/2018**

_____
*Judge's signature*

City and state: Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

1  McGREGOR W. SCOTT
   United States Attorney
2  ROBERT ARTUZ
   Special Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8             IN THE UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

| 11 | In the Matter of the Search of: | CASE NO. |
|---|---|---|
| 12 | HP laptop (Serial #CNF8023G0D), HP | AFFIDAVIT IN SUPPORT OF AN APPLICATION |
| 13 | Chromebook (Serial #8CG717118V), ASUS laptop (Serial #X5405A-BPD0602V), LG | UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICES |
| 14 | cellphone (Serial #GBLGL63BGB / ZNFL63BL), 2 USB drives CURRENTLY | |
| 15 | LOCATED AT the United States Secret Service Sacramento Resident Office Evidence Vault, | |
| 16 | 501 I St. Suite 12-100, Sacramento, CA 95814 | |

17

18       1.      I, David Schacht, being first duly sworn, hereby depose and state as follows:

19                 **I.        INTRODUCTION AND AGENT BACKGROUND**

20       2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of

21  Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—

22  which are currently in law enforcement possession, and the extraction from that property of

23  electronically stored information described in Attachment B.

24       3.      I am a Special Agent with the United States Secret Service, and have been since May 15,

25  2017. I am currently assigned to the Sacramento Resident Office. As part of my duties, I investigate

26  offenses involving various financial crimes to include those that involve the counterfeiting of United

27  States currency, false identification, bank fraud, computer fraud, access device fraud, and wire fraud. In

28  that capacity, I have received training and have participated in the investigations of these types of crimes

1   including the use of various criminal methods to perpetrate these frauds. I graduated from the Criminal

2   Investigator Training Program through the Federal Law Enforcement Training Center, in which I

3   received training on electronic evidence. I have also completed the Basic Introduction to computer and

4   electronic crimes program (BICEP) through the United States Secret Service's Rowley Training Center.

5       4.      This affidavit is intended to show only that there is sufficient probable cause for the

6   requested warrant and does not set forth all of my knowledge about this matter.

7   ## II.    IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8       4.      The property to be searched is an HP laptop (Serial #CNF8023G0D), HP Chromebook

9   (Serial #8CG717118V), ASUS laptop (Serial #X5405A-BPD0602V), LG cellphone (Serial

10  #GBLGL63BGB / ZNFL63BL), 2 USB drives, hereinafter the "Devices." The Devices are currently

11  located at the United States Secret Service Sacramento Resident Office Evidence Vault, 501 I St. Suite

12  12-100, Sacramento, CA 95814.

13      5.      The applied-for warrant would authorize the forensic examination of the Devices for the

14  purpose of identifying electronically stored data particularly described in Attachment B.

15  ## III.    PROBABLE CAUSE

16      5.      Mohammed Ashraf was arrested by Napa Police Department (PD) for possessing and

17  passing counterfeit Federal Reserve Notes (CFT FRNs) on 12/20/17. Ashraf has been arrested multiple

18  times for passing CFT FRNs. Ashraf was arrested by Gilroy Police Department on 10/8/16 for

19  possessing and passing CFT FRNs. Ashraf was arrested by Dublin Police Department on 9/16/17 for

20  possessing and passing CFT FRNs. The arrest by Napa PD on 12/20/17 led to Napa PD obtaining and

21  executing a search warrant of Ashraf's residence on 1/11/2018. During the execution of the search warrant, the

22  officers seized 41 Counterfeit $100.00 FRNs, 64 $1.00 FRNs that were in the process of being washed,

23  counterfeit Benjamin Franklin watermark stickers, glitter nail polish and multiple computers/tablets/

24  USB storage devices. Based on my training and experience, I know that counterfeit manufacturers will

25  bleach $1.00 FRNs and use the genuine paper to print CFT higher denomination FRNs. I also know that

26  counterfeit manufacturers will use nail polish to replicate the optically variable ink used on genuine

27  $100.00 FRNs and counterfeit watermarks to replicate the watermark security feature on genuine FRNs.

28  The type of CFT FRNs Ashraf was in possession of and passing in stores was manufactured using an

1  inkjet style printer.  This type of manufacturing would require use of a laptop computer, tablet or other
2  electronic storage device and the use of a printer.

3      6.      Based on the evidence that was obtained by Napa Police Department, it is highly
4  probable that Ashraf utilized the Devices listed as part of his CFT operation.  For example, it is highly
5  probably that articles of Ashraf's CFT FRN manufacturing operation are stored on The Devices.

6      7.      Based on my training and experience, counterfeit manufacturing schemes utilize laptop
7  computers to store images of the CFT FRNs that are printed.  Laptops also have software that is utilized
8  by CFT manufacturers to adjust images of FRNs and security features found on FRNs.  The style of
9  CFT FRN that Ashraf was printing is consistent with the use of a laptop computer.

10     8.      Based on my training and experience, CFT manufacturers use cellular phones to converse
11  with co-conspirators in the CFT scheme.  It is also common for CFT manufacturers to use cellular
12  phones to save contacts of co-conspirators and potential customers (e.g., purchasers of CFT FRNs), and
13  to send images of CFT FRNs to co-conspirators and potential customers.  When Ashraf was arrested by
14  Napa PD, there was a reported female involved in the passing of the CFT FRNs.  It is highly probable
15  that Ashraf was utilizing his cellular phone as part of his CFT operation.  It is also common for CFT
16  manufacturers to use cellular phones (and laptop computers) to store information relating to: (1) the
17  dates, places, and amounts of specific transactions involving CFT FRNs; and (2) sources of CFT FRNs
18  (including names, addresses, phone numbers, or any other identifying information).

19     9.      Based on my training and experience, CFT manufacturers will also use USB drives to
20  store images of CFT FRNs, images of genuine FRNs and security features, logs of their CFT operation
21  and contacts of co-conspirators.  Based on the CFT FRNs that Ashraf was possessing, USB drives would
22  be a common device used as part of his operation.

23     10.     Based on my training and experience, it is also common for CFT manufacturers to use
24  laptops computers, cellular phones, and USB drives to store information relating to the types, amounts,
25  and prices of CFT FRNs.

26     11.     The Devices are currently in the lawful possession of the United States Secret Service.  It
27  came into the United States Secret Service's possession in the following way:  Napa Police Department
   on 1/16/18   ᴏꜱ
28  seized the devices during the execution of the search warrant, Napa Police Department has released

1   custody of the property to the United States Secret Service in furtherance of this case.  Therefore, while

2   the United States Secret Service might already have all necessary authority to examine the Devices, I

3   seek this additional warrant out of an abundance of caution to be certain that an examination of the

4   Devices will comply with the Fourth Amendment and other applicable laws.

5                                    **IV.    TECHNICAL TERMS**

6          12.    Based on my training and experience, I use the following technical terms to convey the

7   following meanings:

8          a)    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is

9                  a handheld wireless device used for voice and data communication through radio signals.

10                These telephones send signals through networks of transmitter/receivers, enabling

11                communication with other wireless telephones or traditional "land line" telephones.  A

12                wireless telephone usually contains a "call log," which records the telephone number,

13                date, and time of calls made to and from the phone.  In addition to enabling voice

14                communications, wireless telephones offer a broad range of capabilities.  These

15                capabilities include: storing names and phone numbers in electronic "address books;"

16                sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and

17                storing still photographs and moving video; storing and playing back audio files; storing

18                dates, appointments, and other information on personal calendars; and accessing and

19                downloading information from the Internet.  Wireless telephones may also include global

20                positioning system ("GPS") technology for determining the location of the device.

21          b)    Digital camera:  A digital camera is a camera that records pictures as digital picture files,

22                rather than by using photographic film.  Digital cameras use a variety of fixed and

23                removable storage media to store their recorded images.  Images can usually be retrieved

24                by connecting the camera to a computer or by connecting the removable storage medium

25                to a separate reader.  Removable storage media include various types of flash memory

26                cards or miniature hard drives.  Most digital cameras also include a screen for viewing

27                the stored images.  This storage media can contain any digital data, including data

28                unrelated to photographs or videos.

AFFIDAVIT                                                   4

c)   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d)   GPS: A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal

computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f) Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g) IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

h) Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13. Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as wireless telephone, digital camera, personal media player, GPS, PDA, tablet and connect to the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

/ / /

/ / /

## V.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

15.     There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

    a)     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b)     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c)     Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

1         d)      Similarly, files that have been viewed via the Internet are sometimes automatically

2                downloaded into a temporary Internet directory or "cache."

3       16.    Forensic evidence. As further described in Attachment B, this application seeks

4 permission to locate not only electronically stored information that might serve as direct evidence of the

5 crimes described on the warrant, but also forensic evidence that establishes how the Devices were used,

6 the purpose of its use, who used it, and when. There is probable cause to believe that this forensic

7 electronic evidence might be on the Devices because:

8         a)      Data on the storage medium can provide evidence of a file that was once on the storage

9                medium but has since been deleted or edited, or of a deleted portion of a file (such as a

10              paragraph that has been deleted from a word processing file). Virtual memory paging

11              systems can leave traces of information on the storage medium that show what tasks and

12              processes were recently active. Web browsers, e-mail programs, and chat programs store

13              configuration information on the storage medium that can reveal information such as

14              online nicknames and passwords. Operating systems can record additional information,

15              such as the attachment of peripherals, the attachment of USB flash storage devices or

16              other external storage media, and the times the computer was in use. Computer file

17              systems can record information about the dates files were created and the sequence in

18              which they were created.

19         b)      Forensic evidence on a device can also indicate who has used or controlled the device.

20              This "user attribution" evidence is analogous to the search for "indicia of occupancy"

21              while executing a search warrant at a residence.

22         c)      A person with appropriate familiarity with how an electronic device works may, after

23              examining this forensic evidence in its proper context, be able to draw conclusions about

24              how electronic devices were used, the purpose of their use, who used them, and when.

25         d)      The process of identifying the exact electronically stored information on a storage

26              medium that are necessary to draw an accurate conclusion is a dynamic process.

27              Electronic evidence is not always data that can be merely reviewed by a review team and

28              passed along to investigators. Whether data stored on a computer is evidence may

AFFIDAVIT                            8

1  depend on other information stored on the computer and the application of knowledge

2  about how a computer behaves.  Therefore, contextual information necessary to

3  understand other evidence also falls within the scope of the warrant.

4   e) Further, in finding evidence of how a device was used, the purpose of its use, who used

5  it, and when, sometimes it is necessary to establish that a particular thing is not present on

6  a storage medium.

7  17.  <u>Nature of examination.</u>  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

8  warrant I am applying for would permit the examination of the devices consistent with the warrant.  The

9  examination may require authorities to employ techniques, including but not limited to computer-

10  assisted scans of the entire medium, that might expose many parts of the devices to human inspection in

11  order to determine whether it is evidence described by the warrant.

12  18.  <u>Manner of execution.</u>  Because this warrant seeks only permission to examine devices

13  already in law enforcement's possession, the execution of this warrant does not involve the physical

14  intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize

15  execution of the warrant at any time in the day or night.

16  / / /
17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

## VI.   CONCLUSION

19.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

David Schacht
Special Agent
United States Secret Service

Subscribed and sworn to before me on: 4/6/2018

The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

Approved as to form by SAUSA ROBERT ARTUZ

## ATTACHMENT A

The property to be searched is a HP laptop (Serial #CNF8023G0D), HP Chromebook (Serial #8CG717118V), ASUS laptop (Serial #X5405A-BPD0602V), LG cellphone (Serial #GBLGL63BGB / ZNFL63BL), 2 USB drives, hereinafter the "Devices." The Devices is currently located at the United States Secret Service Sacramento Resident Office Evidence Vault, 501 I St. Suite 12-100, Sacramento, CA 95814.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of 18 USC 471 Obligations or securities of United States and involve Mohammed Amir Ashraf since 12/20/17, including:

      a. Any correspondence, communication, photograph, or other data concerning counterfeit currency or other obligations, counterfeit identification, or false identification; any correspondence, communication, or data evidencing an agreement, plan, practice, or other evidence of a conspiracy to manufacture, pass, utter, sell, possess, or take any other action regarding counterfeit currency, and to return items purchased with counterfeit currency, any correspondence, communication, or data evidencing acts or steps taken to further that conspiracy, whether inherently unlawful or not;

      b. lists of customers and related identifying information;

      c. types, amounts, and prices of counterfeit FRNs dealt as well as dates, places, and amounts of specific transactions;

      d. any information related to sources of counterfeit FRNs (including names, addresses, phone numbers, or any other identifying information);

      e. any information recording Mohammed Ashraf's schedule or travel from 12/20/17 to the present;

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>HP laptop (Serial #CNF8023G0D), HP Chromebook<br>(Serial #8CG717118V), ASUS laptop (Serial<br>#X5405A-BPD0602V), LG cellphone (Serial<br>#GBLGL63BGB / ZNFL63BL), 2 USB drives,<br>CURRENTLY LOCATED AT the United States<br>Secret Service Sacramento Resident Office Evidence<br>Vault, 501 I St. Suite 12-100, Sacramento, CA 95814 | Case No.<br><br>**2.1 8 - SW   0 3 4 2   CKD** |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _4/20/2018_ _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  _4/6/2018 / 10:40 am_          _Carolyn K. Delaney_
                                                                                      *Judge's signature*

City and state:     Sacramento, California          Carolyn K. Delaney, U.S. Magistrate Judge
                                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____
             Signature of Judge                                                    Date

## **ATTACHMENT A**

The property to be searched is a HP laptop (Serial #CNF8023G0D), HP Chromebook (Serial #8CG717118V), ASUS laptop (Serial #X5405A-BPD0602V), LG cellphone (Serial #GBLGL63BGB / ZNFL63BL), 2 USB drives, hereinafter the "Devices." The Devices is currently located at the United States Secret Service Sacramento Resident Office Evidence Vault, 501 I St. Suite 12-100, Sacramento, CA 95814.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

# **ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of 18 USC 471 Obligations or securities of United States and involve Mohammed Amir Ashraf since 12/20/17, including:

> a.  Any correspondence, communication, photograph, or other data concerning counterfeit currency or other obligations, counterfeit identification, or false identification; any correspondence, communication, or data evidencing an agreement, plan, practice, or other evidence of a conspiracy to manufacture, pass, utter, sell, possess, or take any other action regarding counterfeit currency, and to return items purchased with counterfeit currency, any correspondence, communication, or data evidencing acts or steps taken to further that conspiracy, whether inherently unlawful or not;

> b.  lists of customers and related identifying information;

> c.  types, amounts, and prices of counterfeit FRNs dealt as well as dates, places, and amounts of specific transactions;

> d.  any information related to sources of counterfeit FRNs (including names, addresses, phone numbers, or any other identifying information);

> e.  any information recording Mohammed Ashraf's schedule or travel from 12/20/17 to the present;

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.